**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | Chapter 7 |
| | ) | |
| JOPSEH W. CAMPBELL, | ) | CASE NO. 12-45422 |
| | ) | |
| Debtor(s) | ) | Hon. Jacqueline P. Cox |

**COVER SHEET FOR APPLICATION FOR**
**PROFESSIONAL COMPENSATION**

Name of Applicant:             STEVEN R. RADTKE, Attorney for Trustee

Authorized to Provide          Steven R. Radtke, Trustee of the Estate of
Professional Service to:         Joseph W. Campbell

Date of Order Authorizing Employment:     July 30, 2013

Period for Which
Compensation is Sought:        July 30, 2013  to Close of Case

Amount of Fees Sought pursuant to
11 U.S.C. 330:                   $84,037.00

Amount of Expense              $ 1,521.48
Reimbursement Sought:

This is a(n):     Interim Application ___     Final Application __X_

If this is *not* the first application filed herein by this professional, disclose as to all prior fee applications: N/A

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed | Any Amount Ordered Withheld |
|---|---|---|---|---|
| 11/13/14 | 12/27/13-9/9/14 | $20,700.00 | $20,700.00 | |

The aggregated amount of fees and expenses *paid* to the Applicant to date for services rendered and expenses incurred herein is: $20,700.00

DATED:      January 21, 2015      By:  /s/ Steven R. Radtke
                                               STEVEN R. RADTKE

STEVEN R. RADTKE
79 West Monroe Street, Suite 1305
CHICAGO, IL 60603
(312) 346-1935
CampbellCvrShTrAttyFinalFeeApp

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| JOSEPH W. CAMPBELL, | ) | Case No. 12-45422 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

### SECOND AND FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO THE TRUSTEE'S ATTORNEYS

Steven R. Radtke and Chill, Chill & Radtke, P.C. ("Applicants") pursuant to §330 of Title 11, United States Code, request that this Court enter an order allowing compensation and reimbursement of expenses to Applicants as attorneys for the Trustee, and in support thereof, respectfully state as follows:

### Jurisdiction and Venue

1.    This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

3.    Venue of this case and matter is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

4.    On November 16, 2012 Joseph W. Campbell ("Debtor") commenced this case by filing a voluntary petition for relief under chapter 7 of title 11, United States Code ("Code").

5.    Steven R. Radtke is the duly appointed qualified and acting trustee herein (the "Trustee").

6.    On July 30, 2013 the Court entered an order authorizing the Trustee to retain Applicants as his attorneys.  A copy of said order is attached hereto as **Exhibit A.**

7.    Applicants have served continuously as counsel to the Trustee since they were retained on July 30, 2013.

8.    During the course of his administration, the Trustee's investigation revealed that at the time the Debtor filed his bankruptcy petition, he was the record owner of i) a 2003 Lamborghini Murcielago Coupe, ii) a 1997 Dodge Viper, iii) a 1981 DeLorean

DMC, iv) a 1978 Pontiac Firebird Trans Am, v) a 1989 Pontiac Firebird Trans Am/Turbo, vi) a 1971 Chevrolet Corvette and vii) a 1966 Chevrolet Corvette. Debtor did not list the vehicles in his bankruptcy schedules and he did not disclose the details of any transfers of any of the vehicles.

9.  Upon further investigation and with the assistance of the Office of the United States Trustee, the Trustee learned that on August 20, 2013 the Lamborghini was being offered for sale by a car dealer in Florida. Applicants immediately filed an adversary proceeding on behalf of the Trustee to recover the vehicle. Shortly thereafter the Trustee learned that during the course of his bankruptcy proceeding the Debtor had sold the vehicle to a third party purchaser in Chicago for the sum of $122,000. According to its counsel, the local third party purchaser had consigned the vehicle to the Florida dealer who offered it for sale. After the adversary proceeding was filed the consignment was cancelled and the Lamborghini was returned to Chicago.

10.  At all times Debtor concealed his ownership of the Lamborghini. He did not disclose his sale of the vehicle and he did not obtain an order of Court authorizing him to sell the vehicle.

### Turnover and Contempt Proceedings

11.  Upon the discovery of the unauthorized sale of the Lamborghini, Applicants prepared and pursued the Trustee's emergency Motion to compel Debtor to turn over to the Trustee the proceeds of the sale of the Lamborghini and the vehicles titled in Debtor's name.

12.  On August 28, 2013 the Court entered an order directing Debtor to immediately turn over the proceeds of the sale of the Lamborghini in the amount of $122,000 to the Trustee. The Court also directed Debtor to turn over the remaining six vehicles within 14 days.

13.  The Debtor did not comply with the order to turn over the $122,000, and on September 5, 2014, the Court entered an order of civil contempt against Debtor.

14.  The Debtor did not comply with the order to turn over the remaining six vehicles, and on September 20, 2013, the Court entered a second order of civil contempt against Debtor.

15.  The United States Marshal later apprehended the Debtor who appeared before the Court. He claimed to have spent the $122,000. He claimed to have sold or otherwise to have no knowledge as to the whereabouts of the vehicles.

16.  The Court entered an order confining the Debtor to the Metropolitan Correctional Center until he purged his contempt.

17.  After spending seven days in confinement, Debtor was released in order to allow him to prepare an accounting of the Lamborghini proceeds and any disposition of the vehicles.

18.  The contempt proceedings were continued from time to time over a period of months.  After Debtor was released from the Metropolitan Correctional Center, he filed an accounting, but he never turned over any of the proceeds of the Lamborghini and he never turned over any of the six vehicles.

## The Trustee's Action to Avoid the Unauthorized Transfer of the Lamborghini

19.  Applicants prepared and filed the Trustee's adversary proceeding in Case No. 13-1083.  Under the adversary complaint, as amended, the Trustee sought to recover the Lamborghini or the value thereof from the third party purchaser.

20.  After having exhausted his efforts to collect from the Debtor, Applicants actively pursued the Trustee's suit to recover the Lamborghini or its value from the third party purchaser.

21.  On April 30, 2014 the Court entered a judgment in favor of the Trustee.

22.  The Defendant moved to vacate the judgment and settlement negotiations between the Trustee and Defendant ensued.

23.  Eventually the Trustee and Defendant agreed to a settlement.  Applicants prepared and presented the Trustee's Application to Approve Compromise.  On July 8, 2014 the Court entered an order approving a settlement whereby the third party purchaser paid the Trustee the sum of $103,947.57 in full settlement of all matters in dispute in the adversary proceeding.  On July 15, 2014, after Applicants had collected all of the settlement funds on behalf of the Trustee, the Court entered an order dismissing the adversary complaint.

## Locating Six Vehicles

24.  The Trustee continued his investigation as to the whereabouts of the six remaining vehicles described in Par. 8 above after Debtor was released from confinement in the contempt proceedings.

25. The Trustee visited a commercial auto repair and storage facility in Wilmington, IL and personally inspected the outside of the premises. He interviewed the landlord. The Trustee was informed that vehicles matching the description of some of the vehicles described in Par. 8 above were being stored in a leased portion of the premises.

26. The Trustee was unable to inspect the interior of the leased premises but he was able to determine the identity of the lessee of the leased premises.

27. On November 5, 2013 Applicants prepared, filed and presented the Trustee's Emergency Motion for a 2004 Examination to permit his expedited inspection of the leased premises. The Court continued the matter for hearing on November 7, 2013 so that the Trustee could serve the motion on the lessee. Applicants engaged a process server who served the Motion on the lessee later in the day on November 5, 2014.

28. At approximately 8:00 a.m. on November 6, 2013 the landlord of the Wilmington, IL property informed the Trustee that unknown person(s) broke into the storage facility the previous night, removed all of the vehicles and changed the locks.

29. Thereafter, the matter was referred to law enforcement officials.

30. On or about November 19, 2013, the Federal Bureau of Investigation ("FBI") was able to recover the vehicles and move them into its storage facility.

## Recovery and Sale of Six Vehicles and Continued Case Administration.

31. After the FBI completed processing the vehicles, Applicants worked with federal law enforcement authorities to arrange for the transport of the vehicles from FBI custody to the Trustee's storage facility.

32. They performed the necessary services to retain the Trustee's auctioneer, who prepared the vehicles for sale and sold all six vehicles via internet auctions on eBay pursuant to order of Court.

33. The order authorizing the Trustee to sell the six vehicles provided that the sales were free and clear of all liens and encumbrances, with any such liens and encumbrances attaching to the proceeds of sale.

34. Dart Bank initially filed a claim in which it asserted a security interest in the sale of the 1971 Corvette. Applicants reviewed the claim, determined that the loan which secured the purchase had been paid, reviewed applicable state law and analyzed the legal arguments that Dart Bank asserted in support of its claim that it was entitled to a judgment lien on the 1971 Chevrolet Corvette. Discussions ensued with the result that

4

Dart Bank filed an amended general unsecured claim in the amount of $266,817.24, after taking into account funds received from the sale of the 1966 Chevrolet Corvette.

35.   Applicants then performed the necessary services to retain an accountant for the Trustee.  The accountant prepared the necessary federal and state tax returns to report the Trustee's liquidation activities.  Applicants prepared and filed applications for prompt determinations of tax liability pursuant to 11 U.S.C. 505(b), and the Internal Revenue Service has accepted the Trustee's return as filed.

.

### Request for Final Compensation

36.   This is Applicants' Second and Final Application for Allowance of Compensation and Reimbursement of Expenses.  It covers services performed during the period from July 30, 2013 through the closing of the case.

37.   On December 5, 2014 the Court allowed interim compensation to Applicants in the amount of $20,700 pursuant to 11 U.S.C. §§ 506(c) and 330 for services related only to the sale of the six vehicles which were rendered between December 27, 2013 and September 9, 2014.

38.   Applicants have organized and categorized their time in connection with the case and this Second and Final Application for Allowance of Compensation and Reimbursement of Expenses.  Attached hereto as **Exhibit B** is the time schedule of Steven R. Radtke, wherein he shows actual time spent and costs advanced for which Applicants seek reimbursement.  His time is allocated as follows:

| ACTIVITY | HOURS | COMPENSATION REQUESTED |
|---|---|---|
| Turnover and Contempt Proceedings | 137.90 | $51,712.50 |
| Adversary Complaint under 11 U.S.C. 549(a) | 44.40 | $16,650.00 |
| Case Administration including Claims Work | 25.50 | $ 9,562.50 |
| Fee/Employment Applications | 18.80 | $ 6,112.50 |
| **TOTALS** | **226.60** | **$84,037.50** |

39.   A general description of the legal services rendered is as follows:

a)   **Turnover and Contempt Proceedings.**   Time spent in this category includes identifying unscheduled vehicles, preparing and presenting motions directing Debtor to turn over proceeds in the amount of $122,000 from the the Debtor's unauthorized sale of the 2003 Lamborghini and to turn over several other vehicles to the Trustee, and seeking to secure Debtor's compliance with the Turnover orders by pursing extended contempt proceedings. As a result of Applicants' efforts the Trustee recovered the sum of $162,502.00 for the estate.

b)   **Adversary Complaint under 11 U.S.C. 549(a).**   Time spent in this category includes preparing, filing and pursuing and settling the Trustee's adversary proceeding to set aside the Debtor's unauthorized sale of his 2003 Lamborghini to a third party.   As a result of Applicants' efforts, the Trustee recovered the sum of $103,947.57 for the estate.

c)   **Case Administration**.   Time spent in this category includes issues related to interest allowable on Dart Bank's claim and resolving Dart Bank's claim for a security interest in the 1971 Chevrolet Corvette.  Also included is time spent making a demand for damages for breach of contract when the initial successful bidder refused to close on his $55,000 bid for the 1966 Chevrolet Corvette.  The Trustee later sold the vehicle at a later auction for $45,201 and given the delays and costs of litigation and the uncertainty of collection, the Trustee decided not to pursue litigation.  Finally, time in this category includes preparing and filing the Trustee's request for a prompt determination of tax liability pursuant to 11 U.S.C. 505(b) and responding to creditor inquiries and handling the day-to-day legal matters which arise in the Trustee's administration of the case.

d)   **Fee/Employment Applications**.   Time spent in this category relates to preparing and presenting the Trustee's application to retain counsel and an accountant, resolving issues related to allowance of fees and costs chargeable against the net proceeds of sale of the 1966 Corvette pursuant to 11 U.S.C. 506(c), preparing and presenting Applicants' initial application for compensation and preparing and presenting Applicants' final fee application.

40.   Applicants have served continuously as counsel to the Trustee since the date of their retention.

41.   Based on the nature, extent and value of the services performed by Applicants, the results achieved and the cost of comparable services, the compensation is fair and reasonable and Applicants request that it be allowed in full.

WHEREFORE, Applicants request that the Court enter an Order:

A.    Allowing Applicants' Second and Final Application for Allowance of Compensation in the sum of $84,037.00 as payment for legal fees;

B.    Allowing reimbursement of expenses to Applicants in the amount of $1,521.48; and

C.    Granting the trustee such other and further relief as the Court deems just and proper.

Respectfully submitted,


By: /s/ Steven R. Radtke
Attorney for Trustee


Steven R. Radtke (#3124816)
CHILL, CHILL & RADTKE, P.C.
Attorneys for the Trustee
79 WEST MONROE ST., SUITE 1305
CHICAGO IL 60603
(312)346-1935
CampbellAttyFeeFinal

7

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | Case No. 12-45422 |
| JOSEPH W. CAMPBELL, | ) | Hon.  Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | |

**Affidavit Pursuant to Rule 2016**

State of Illinois        )
County of Cook        )

     I, STEVEN R. RADTKE, being first duly sworn on oath, deposes and states as follows:

1.    I am a principal in Chill, Chill & Radtke, P.C. and am authorized to execute this affidavit on behalf of Chill, Chill & Radtke, P.C.

2.    I have read the Second and Final Application for Allowance of Compensation and Reimbursement of Expenses to the Trustee's Attorneys ("Application") and all of the factual matters set forth therein are true to the best of my knowledge, information and belief. I or my agents pursuant to my direction performed the services set forth and described in the Application.

3.    I have made no arrangements for a division of compensation received or to be received herein directly or indirectly nor does any understanding exist between myself or any other person, except that I am a principal at Chill, Chill & Radtke, P.C. a law firm at which I was employed during the pendency of this case. I have not previously received payment of any compensation of services rendered in connection with this case.

4.    Further Affiant sayeth not.

_____
Steven R. Radtke

Subscribed and sworn to
before me this _9th_ day
of _February_, 2015

_____
Notary Public
CampbellAttuFeeFinal

OFFICIAL SEAL
SOCORRO CHAVEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/24/18

8

OFFICIAL SEAL
SOCORRO CHAVEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/24/18